UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| DONNIE J MILLER, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. G-10-30 |
| § | |
| GALVESTON COUNTY SHERRIFFS, § | |
| § | |
| Defendants. § | |
| § | |

**MEMORANDUM AND ORDER OF DISMISSAL**

Donnie J. Miller was an inmate in custody of the Galveston County Jail when he filed this civil rights action. He is no longer incarcerated. He has filed suit pursuant to 42 U.S.C. § 1983 against Galveston County Sheriff's Office deputies Melissa Collins, Shawn Lozica, Brent Cooley, Duggan Trochesset and James Roy, alleging violations of his Fourth Amendment rights during the course of his arrest. The defendants have moved for summary judgment. (Doc. No. 23). Miller has filed a response. (Doc. No. 28). Based on the pleadings, the motions, the summary judgment record and the applicable law, this court will grant the defendants' motion for summary judgment. The reasons for this ruling are stated below.

**I.     FACTUAL BACKGROUND**

This case arises out of a sting operation that was conducted by the Galveston County Sheriff's Office (GCSO) on December 12, 2009, in Dickinson, Texas. The sting was organized in response to information regarding alleged drug activity, specifically, the sale of crack cocaine by a drug dealer, "Brandon." The plaintiff Miller was an undercover officer in the Special Crimes Unit for the GCSO, and posed as a buyer of crack cocaine that was being sold by "Brandon." The sale was brokered or mediated by the plaintiff, Donnie Miller. On December

1

12, 2009, Officer Collins met with plaintiff Miller, who informed her that he would arrange for the meeting between "Brandon," the drug dealer, and Collins.  Officer Collins met with "Brandon" and his associates and, after much negotiation, agreed to purchase the crack cocaine from "Brandon."  When the drug deal was close to being finalized inside Miller's apartment (between Officer Collins, Miller and "Brandon"),  Officer Collins voiced the pre-arranged signal to her Special Crimes Unit team to engage the apartment and arrest the offenders.  When the Special Crimes Unit deputies banged on the door, Miller, realizing that Sheriff's deputies had arrived, locked the two deadbolts on the door and barricaded the entrance.  When the deputies (Defendants Lozica, Cooley, Roy and Trochesset) broke the front window to gain entrance and announced, Miller unlocked the door.  The deputies entered the apartment in the following order: Roy, Lozica, Cooley, and Trochesset.  Miller contends in his complaint that at this point he was "going to [his] knees" with his hands on his head when he was struck in the face with the butt of a gun, causing him to suffer a broken nose and facial lacerations. (Doc. No. 1).  Miller further contends that he was slammed face first into the concrete floor and suffered a large cut over his left eye, a concussion, nerve damage with permanent numbness, and disfigurement.  *Id.*  The defendants contend otherwise. Defendant Collins, who was in the apartment when the arrest was made, states in her case report that Miller was struck in the face with the door as it slammed open and that no officer struck Miller. (Doc. No. 24).  Detective Lozica states in his affidavit that by the time he entered the apartment behind Detective Roy, Miller was standing near a bar by the kitchen and was bleeding from the face.  Lozica did not know how Miller received the injury.  *Id.*  Defendant Cooley states in his affidavit that he noticed Miller had blood on his face while he was being handcuffed.  When Cooley asked Miller about the blood, Miller told him he didn't know how his injury happened.  *Id.*   Defendant Roy states in his affidavit that Miller was

2

standing near a bar when he entered the room.  When Miller refused to drop to the ground, Roy pushed him down and handcuffed him but did not hit him with a gun or anything else. *Id*.

The Emergency Medical Service (EMS) was called to the scene but Miller refused treatment.  Several minutes later, Miller decided to allow the EMS to examine him so they were called back.  The EMS then transported Miller to the Mainland Center Hospital emergency room for treatment.

II.     **STANDARD OF REVIEW**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  "The [movant] bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact." *Lynch Props. Inc. v. Potomac Ins. Co.,* 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex v. Catrett*, 477 U.S. 317, 322-325)).  Once the movant caries this initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. See *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).  The nonmovant must go beyond the pleadings and designate specific facts proving that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The nonmovant may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts.   FED. R. CIV. P. 56(e).  "[T]he substantive law will identify which facts are material. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced

3

evidence showing that a controversy exists." *Lynch*, 140 F.3d at 625. "A dispute regarding a material fact is 'genuine' if the evidence would permit a reasonable jury to return a verdict in favor of the nonmoving party." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004). Thus, "[t]he appropriate inquiry is 'whether the evidence represents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005)(quoting *Anderson*, 477 U.S. at 251-252).

### III.     ANALYSIS & DISCUSSION

Miller alleges that the defendants used excessive force against him during the course of his arrest. Contrarily, the defendants deny that excessive force was used during the course of the arrest and contend that they are entitled to qualified immunity. Under the doctrine of qualified immunity, governmental officers are safeguarded "from civil liability for damages based upon the performance of discretionary functions if [their] acts were objectively reasonable in light of then clearly established law." *Attberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005) (quoting *Thompson v. Upshur County*, 245 F.3d 447, 456 (5th Cir. 2001)). "When a defendant invokes [the] qualified immunity [defense], the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Attenberry*, 430 F.3d at 253 (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curium).

To establish a claim of excessive force, plaintiffs must demonstrate: "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009), *cert. denied,* 176 L.Ed. 2d 561 (2010). Under the objective reasonableness standard, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and

circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Relevant factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396. "The calculus of reasonableness must embody an allowance for the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Id*. at 397. Therefore, reasonableness must be judged from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396.

In this case, Miller has alleged that he was knocked unconscious but is not sure how he became so. In fact, his account of his injuries varies. In his complaint, he states he was hit in the face with a gun and his face was shoved into concrete. (Doc. No. 1). When interviewed at the Bartlett State Jail, he stated that he was struck in the face by a shotgun which he described as long and black. (Doc. No. 24, Affidavit of Perry Larvin). In his interview at the County Jail, he stated he was hit in the face with the butt of a shotgun or smacked his face against a cabinet. Miller specifically denies that any of the officers hit him in the face with a pistol. (Doc. No. 26, Affidavit of Perry Larvin).

Miller has failed to establish a genuine issue of material fact with respect to the second and third element of his excessive force claim. *See id.* He has failed to show the extent of his injuries as alleged, nor does he state any facts to contravene the sworn testimony of the defendants that they were not carrying shotguns and did not strike him in any manner. Even if the record showed that Miller's injuries were more than *de minimis* and resulted directly and solely from the defendants' attempt to retrieve the crack cocaine and to arrest him and his two

5

associates, Miller fails to show that the force exhibited by any defendant was excessive to the need before he was handcuffed or that the use of force under these circumstances was objectively unreasonable.  *See id*. at 395-96 (noting that "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it").  Under the circumstances described in the summary judgment evidence, it was not unreasonable for the defendants to assume that Miller and his two associates were involved in a drug trafficking crime and that the situation was an inherently dangerous one. The detaining officers used the modicum of force that they deemed appropriate under the circumstances, and Miller has not shown how that force was "clearly excessive" or "clearly unreasonable."  Moreover, Miller has failed to show that his injury resulted "directly and only from" the defendants' use of force.

Before a Court can reach the issue of qualified immunity, it must decide whether the plaintiff has stated a claim for a violation of a constitutional right.  *Sappington v. Bartee*, 195 F.3d 234, 236 (5th Cir. 1999).  It is evident to this Court, after reviewing the pleadings and summary judgment evidence, that Miller has wholly failed to state or otherwise establish a constitutional claim in this cause and defendants are, therefore, entitled to dismissal on that basis. *See Wells v. Bonner*, 45 F.3d 90, 94 (5th Cir. 1995).

## IV. CONCLUSION

Based on the foregoing discussion, the Court **GRANTS** the defendants' motion for summary judgment and this case is **DISMISSED.**

It is so **ORDERED.**

SIGNED at Houston, Texas this 20th day of September, 2011.

_____
Kenneth M. Hoyt
United States District Judge